Argued 9 October; decided 16 October, 1899.

### KERN *v.* KERN.

[58 Pac. 527.]

PURCHASE BY TRUSTEE OF PROPERTY HELD BY HIM AS SUCH.—A father joined with his children to mortgage their land, in which he had a life estate, to secure his loan, and conveyed other land to one son (J.), in trust to sell and apply the proceeds on the principal of the mortgage. Another son (E.) being in possession of the mortgaged land under an agreement that he was to pay the interest as rental, borrowed money to pay the same. This not being repaid, judgment therefor was recovered against him, and his interest in the mortgaged land was sold under execution, and bought by J. *Held*, that J.'s position as trustee did not prevent his purchasing under the execution against E.

TRUSTEE—CONTRACT WITH CESTUI QUE TRUST—A statement by a person that he had bought certain property to save it for a stated individual is not binding on him in the absence of a previous contract to so purchase.

From Multnomah: LOYAL B. STEARNS, Judge.

Suit by Eldon A. Kern against J. W. Kern, Sarah M. Kern and William Kern to declare a trust in certain land. Defendants prevailed; hence this appeal.

AFFIRMED.

For appellant there was a brief over the name of *Watson, Beekman & Watson*, with an oral argument by *Mr. Edward B. Watson*.

For respondents J. W. and Sarah M. Kern, there was a brief over the name of *Cleland & Cleland*, with an oral argument by *Mr. William A. Cleland*.

MR. JUSTICE BEAN delivered the opinion of the court.

The object of this suit is to have it decreed that the defendant J. W. Kern holds the title to an undivided one-fifth of the wife's half of the donation land claim of. William Kern and wife in trust for the plaintiff. It appears that after the final proof of residence and cultivation required by the donation law had been made by Kern and wife, and accepted by the land department, but before

the patent had been issued, Mrs. Kern died, without making any disposition of her half of the claim.   An estate by the curtesy therefore passed to her husband, and the fee to him and her two sons, the plaintiff and defendant, and her two daughters, Mrs. Marquam and Mrs. Stanborrough, in equal parts, as tenants in common.   On March 15, 1877, the elder Kern and his four children jointly executed a mortgage on the wife's half of the claim to the Oregon and Washington Trust & Investment Company, Limited, to secure the payment of a principal note for $1,000 and nine interest notes, executed by him for money borrowed for his own use.   The first of the interest notes was for $21.35, and became due March 1, 1877, and the other eight were for $55 each, and became due at intervals of six months; the last of the series maturing with the principal note, June 1, 1881. At the time of the execution of this mortgage, and as a part of the same transaction, and for the purpose of indemnifying and saving harmless his children, William Kern conveyed his half of the donation land claim to the defendant J. W. Kern, in trust to sell the same and apply the proceeds thereof in payment of the mortgage on the wife's half of the claim.   When the interest note, maturing June 1, 1878, became due, it was not paid, and on the twenty-first of June the plaintiff, Eldon Kern, borrowed of Kahn Brothers $60, giving therefor a note, executed by himself and his father, and used the money in payment of the interest then due.   When the note matured, neither the plaintiff nor his father being able to meet it, Kahn Brothers brought an action thereon, and recovered a judgment against them jointly for the amount of the note, attorney's fees, and costs, and caused an execution to be issued and levied upon their interest in the premises covered by the mortgage referred to, and on the second of August, 1879, such interest was sold thereunder to the

defendant J. W. Kern for $150, and the execution returned
satisfied in full.  On November 18, 1881, the mortgage
executed by William Kern and his children on the wife's
half of the donation claim was satisfied of record, and on
April 8, 1895, the plaintiff brought this suit, and, a decree
having been rendered against him in the court below, he
appeals.

There are no controverted questions of law presented
by the record.  The only question is one of fact, viz.,
whether the defendant, at the time of his purchase under
the Kahn judgment, stood in such a relation to the prop-
erty in controversy as would, in equity, prevent him from
purchasing on his own account, and for his own use.
The plaintiff's contention, as we understand it, is : (1)
That the defendant was in duty bound to pay and dis-
charge the interest upon the mortgage as it became due,
and therefore can reap no advantage from his negligence
to perform such duty ; and (2) that the Kahn judgment
was, in equity, a common charge upon the property of all
the tenants in common, and, therefore, one tenant could
not purchase thereunder for his own use.  It would pro-
mote no useful end for us to notice the testimony in
detail.  We deem it sufficient to say that we have exam-
ined it with care, and have reached the conclusion that
neither of the positions assumed by the plaintiff is sup-
ported by the evidence.  There was no personal obliga-
tion on the part of J. W. Kern to pay either the mortgage
debt or the interest thereon.  It was the debt of his father,
who agreed to and did take care of the several interest
notes as they matured except the one due June 1, 1878 ;
and the mere fact that the defendant did not pay this note
would not prevent him from purchasing the plaintiff's
interest in the property under a judgment against him.
And it appears from the evidence that the judgment un-
der which the purchase was made in fact for a personal

debt or obligation of the plaintiff. At the time he bor-
rowed the money of Kahn Brothers he was in possession
of the mortgaged premises as a tenant of his father, who
had a life estate therein, under an agreement to pay the
interest on the mortgage as a rental for the use of the
premises, and the money was borrowed for the purpose
of meeting and discharging this obligation, and not to
prevent a foreclosure of the mortgage, as alleged in the
complaint. There is some testimony tending to show
that the defendant stated at the time of or before his pur-
chase under the Kahn judgment, that he intended to
make it in order to preserve the property for the plaintiff,
and that he afterwards said he made the purchase for that
purpose. But there is no evidence of any contract or
agreement between him and the plaintiff by which he was
to so purchase the property, and any intended gratuity
on his part is no ground for equitable relief. It follows
that the decree of the court below must be affirmed, and
it is so ordered.                                   AFFIRMED.

Decided 16 October; rehearing denied 20 November, 1899.